UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


CASHMAN EQUIPMENT CORP.                                    CIVIL ACTION

VERSUS                                                     NO. 05-6271

M/V GODFATHER et al                                        SECTION "F"

### ORDER AND REASONS

Before the Court is motion of defendants Tidewater Inc., Tidewater Marine, L.L.C., Jackson Marine, L.L.C., Logistica Mexicana del Caribe S. de R.L. de C.V. and Pental Insurance Co., Ltd. ("Tidewater") for summary judgment against the co-defendant, Construcciones Maritimas Mexicanas S.A. de C.V. ("CCM"). Tidewater's motion seeks to compel CCM to protect, defend, indemnify and hold Tidewater harmless with respect to the plaintiff's claims in this case based on the terms of the Master Contract for Time Charter between CCM and Tidewater.

### BACKGROUND

This case is an admiralty case under Rule 9(h) of the Federal Rules of Civil Procedure.  The plaintiff, Cashman Equipment Corporation ("Cashman"), alleges that tug, the M/V GODFATHER, negligently, unlawfully, and in violation of the time charter for the plaintiff's barge JMC 301 took the plaintiff's barge under tow and set out for an offshore construction site in the Bay of Campeche. On or about November 20, 2005, the GODFATHER set a course for the Port of Coatzacoalcos on the Bay of Campeche, with plaintiff's barge in tow.  While in route, the tow wire of the GODFATHER allegedly parted and the barge was set adrift in the Bay of Campeche.  Without re-establishing connection with the GODFATHER, the barge went aground off Colorado Beach near the Port of Coatzacoalcos causing damage to her as a result of the grounding and during her eventual removal.

The plaintiff filed suit on November 11, 2005, alleging that the losses and damages incurred were caused solely by the fault and neglect on the part of the GODFATHER and the defendants. Tidewater then filed its answer and third-party complaint against CMM, the charterer of the GODFATHER and the charterer of the barge at the time of the incident.  Tidewater claims that it has a charter party agreement with CMM dated March 18, 1985, that was incorporated into the charter of the GODFATHER, and that pursuant to that charter, CMM obligated itself to provide a safe port.

Furthermore, Tidewater claims that by that same agreement, CMM obligated itself to Tidewater Marine, L.L.C. to protect, defend, indemnify and hold Tidewater harmless for any damage to any vessel tendered by CMM to Tidewater Marine, L.L.C. for tow. Tidewater seeks summary relief on that issue.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

## II. Maritime Contract Interpretation

The Master Contract for Time Charter and Letter Agreement together create a maritime time charter contract between CMM and Tidewater which is governed by federal maritime law. Randall v. Chevron, 13 F. 3d 888 (5th Cir. 1994), overruled on other grounds; Thurmond v. Delta Well Surveyor, 836 F. 2d 952 (5th Cir. 1988). When interpreting a maritime contract, the general rules of contract construction and interpretation apply. See Marine Overseas Services, Inc. v. Crossocean Shipping, Co. Inc., 791 F.2d 1227 (5 th Cir.1986); Ogea v. Loffland Brothers Co., 622 F.2d 186 (5 th Cir.1980). Each provision of a contract must be read in light of others so as to give each the meaning reflected

4

by the contract as a whole. <u>Southwestern Engineering Co. V. Cajun Elec. Power Co-op., Inc.</u>, 915 F.2d 972 (5th Cir. 1990). Finally, each provision of a contract must be given a meaning which renders it, along with all other provisions, effective rather than meaningless. <u>See</u> <u>Lewis v. Hamilton</u>, 652 So.2d 1327 (La.1995).

The Fifth Circuit has noted that "[a] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties." <u>Corbitt v. Diamond M. Drilling Co.</u>, 654 F.2d 329, 333 (5th Cir. 1981). However, the Fifth Circuit cautions, "it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." <u>Id</u>.

Finally, the interpretation of contractual language in an indemnity contract is a question of law suitable for summary judgment by this Court. <u>Seal Offshore, Inc. v. American Standard,Inc.</u>, 736 F. 2d 1078, 1080-1081 (5th Cir. 1984), aff'd in part, vacated in part, 777 F. 2d 1042 (5th Cir. 1985).  In accordance with Fifth Circuit jurisprudence, this Court should strictly construe indemnity agreements. <u>Marathon Pipeline v.</u>

Drilling Rig ROWAN/ODESSA, 527 F.Supp. 824, 835 (E.D. La. 1981), aff'd, 699 F.2d 240 (5th Cir.1983).

### III. Application

The facts in this case are straightforward, as is the time charter text. CMM time chartered the M/V GODFATHER, a Tidewater tug, for various jobs. CMM later time chartered the Barge JMC 301 from Cashman Equipment Corporation and arranged for the GODFATHER to move the barge from loading port to discharge port. During that move, the barge was damaged, and as a result, Cashman, the barge owner, filed this suit.

The question presented for this Court is whether CMM's time charter of the barge renders it the "CHARTERER's vessel" under the agreement between Tidewater and CMM. If so, CMM would be obligated by the terms of the contract to hold Tidewater harmless for damages occurring by any negligence on the part of Tidewater or the unseaworthiness of the GODFATHER.

The Hold Harmless and Indemnity Provision of the Master Contract for Time Charter between Tidewater (as "OWNER") and CMM (as "CHARTERER")is clear and pointedly instructs in uncomplicated terms:

> CHARTERER agrees and binds itself to protect, defend, indemnify, and hold OWNER harmless from and against any claim, demand, suit, loss, or liability as the result of sickness, illness, death, or personal injury of the employees of CHARTERER or its subcontractor and for any

>damage to or loss of CHARTERER'S property or
>CHARTERER'S vessel or equipment occurring by the
>negligence in whole or in part of OWNER or unseaworthiness of the OWNE
>
>OWNER agrees and binds itself to protect, defend,
>indemnify and hold harmless CHARTERER from and against
>any claim, demand, suit, loss or liability as the
>result of death or personal injury of the employees of
>OWNER'S subcontractors, and for any damage to or loss
>of OWNER'S vessel, equipment or other property,
>occurring by the unseaworthiness of any of
>CHARTERER'S vessel(s).
>
>Each party shall insure or self-insure the respective
>obligations outlined above.[1]

Tidewater stretches the terms of this provision, and argues that CMM has contractually agreed to protect, defend and indemnify as well as hold Tidewater harmless for damages or loss to CMM's property or vessel.  Tidewater argues that "vessel" is defined as "the vessel provided by the OWNER [Tidewater] to the CHARTERER [CMM] pursuant to the Charter."  Therefore, it is Tidewater's suggestion that simply because the barge was made available to Tidewater, the barge is the "CHARTERER's vessel." This argument would pervert the text.

"Vessel" is never actually defined by the contract.  The provision upon which Tidewater relies to define "vessel" is merely the "General Terms and Condition" that the "vessel shall be provided with proper certificates" and specifications as shown

---

[1] Rec. Doc. No. 30, Exhibit "A," pp. 6-7.

on the Charter Contract's Vessel Specifications.  Even if this provision was meant to be a definition of "vessel," it obviously does not define "CHARTERER's vessel." The Vessel Specifications sheet does not require that the vessel be the "CHARTERER's vessel," nor does any other provision of the contract.

Even more to the point and quite revealing, the Court notes that the Master Contract for Time Charter also contains a provision which states that the OWNER will provide certain forms of insurance to the CHARTERER's satisfaction.  The insurance required by the contract includes Hull and Machinery Insurance, Collision Insurance, Protection and Indemnity Insurance and Contractual Liability Insurance.  Of particular value is the Collision Insurance provision, which requires that the OWNER shall provide, "Collision, including Tower's Liability when the vessels are towed, in the amount of $2,000,000 U.S. dollars, deductible for OWNER's account."  It is well settled that each provision of a contract must be read in light of others. Southwestern Engineering Co. V. Cajun Elec. Power Co-op., Inc., 915 F.2d 972 (5th Cir. 1990).  The Collision Insurance provision would create a conflict with the interpretation of the contract that Tidewater urges: it would obligate, rather than exonerate, Tidewater for damages incurred at Tidewater's fault during towage. Tidewater argues that this provision does not conflict

8

with its interpretation of the contract if the insurance provision is read to mean that if the barge or tug collided with a foreign object, such as a platform, during the course of towing, the Tower's Liability Insurance would respond to the extent of the Tower's fault.  The contract, however, simply does not say that.

The Fifth Circuit has consistently held that when interpreting a contract under general maritime law, "a court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous." Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 332-33 (5th Cir. 1981)(citing Hicks v. Ocean Drilling and Exploration Co., 512 F.2d 817, 825 (5th Cir.1975)); see also Fontenot v. Mesa Petroleum, 791 F.2d 1207, 1214 (5th Cir.1986). The plain language of the indemnity provision states that the CHARTERER would indemnify for "damage to or loss of CHARTERER'S property or CHARTERER'S vessel or equipment."  The text is clear. It is undisputed that Cashman Equipment Corporation, not CMM, is the owner of the damaged vessel.  This interpretation is bolstered by a plain reading of the Collision Insurance provision requiring Tidewater to carry Collision Insurance with Tower's Liability.  The insurance provision places no qualifications of the kind hoped-for by Tidewater.

9

Accordingly, IT IS ORDERED that the defendant Tidewater's Motion for Summary Judgment is DENIED.

New Orleans, Louisiana, March 26, 2007.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE